UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------×

EDWIN FEBLES,

       *Plaintiff,*

   v.

PARAGON MOTORS OF WOODSIDE, INC., *d/b/a*
PARAGON HONDA, *and* GARY LIN, GABRIEL PENA,
*and* MATT ADOVIC, *individually,*

       *Defendants.*

-----------------------------------------------------------------------×

17 CV 4465

**COMPLAINT**

     Plaintiff Edwin Febles, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendants Paragon Motors of Woodside, Inc., d/b/a Paragon Honda, and Gary Lin, Gabriel Pena, and Matt Adovic, individually (collectively, "Defendants"), as follows:

## PRELIMINARY STATEMENT

     1.    Plaintiff Edwin Febles was employed as a Finance Manager by Defendant Paragon Motors of Woodside, Inc., d/b/a Paragon Honda ("Paragon"), a Honda dealership located in Woodside, New York.

     2.    Throughout his employment at Paragon, Mr. Febles was subjected to severe discrimination and harassment by his coworkers and supervisors—including Defendant Gary Lin, Defendant Gabriel Pena, and Defendant Matt Adovic—because they perceived him as effeminate and gay.

     3.    This discrimination and harassment included "joking" about sexually assaulting Mr. Febles, sending him obscene and offensive photos and text messages, grabbing him in a headlock and holding him down in front of his coworkers, and openly deriding his clothing, appearance, and physical mannerisms.

4. After Mr. Febles complained to his supervisor of the ongoing discrimination, Paragon increased the harassment and obstructed his work before ultimately terminating his employment.

5. Mr. Febles seeks damages and costs against Paragon for: discriminating against him based on his sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; and retaliating against him for his complaints of sex discrimination, in violation of Title VII.

6. Mr. Febles also seeks damages against all Defendants for: discriminating against him based on his gender and perceived sexual orientation (gay), in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*; and retaliating against him for his complaints of discrimination based on sex and perceived sexual orientation, in violation of the NYCHRL.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

7. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under Title VII.

8. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

9. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

10. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC").

On July 17, 2017, the EEOC issued a Right-to-Sue letter relating to the discriminatory acts described in this Complaint. This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

11. Plaintiff respectfully requests a trial before a jury.

## PARTIES

12. Mr. Febles, at all times relevant hereto, was and is a resident of Queens County in the State of New York.

13. Upon information and belief, at all times relevant hereto, Paragon was and is a corporation organized under the laws of the State of New York with its principal place of business located at 57-02 Northern Boulevard, Woodside, New York 11377 in Queens County.

14. Upon information and belief, at all times relevant hereto, Defendant Lin was and is employed by Paragon and a resident of the State of New York.

15. Upon information and belief, at all times relevant hereto, Defendant Pena was and is employed by Paragon and a resident of the State of New York.

16. Upon information and belief, at all times relevant hereto, Defendant Adovic was and is employed by Paragon and a resident of the State of New York.

## STATEMENT OF FACTS

17. On or about May 22, 2015, Paragon hired Mr. Febles as a Finance Manager.

18. After Mr. Febles's hire, Paragon required him to participate in a group chat that included Mr. Febles's entire team at Paragon (the "Group Chat").

19. Paragon required Mr. Febles to "agree" to a "disclaimer" that "anything can be said" in the Group Chat, including discriminatory and harassing comments and offensive, obscene language.

20. Such conduct has no place anywhere, let alone a workplace; the disclaimer emboldened Paragon's employees to harass Mr. Febles, believing that they were immune to any consequences.

21. Throughout Mr. Febles's employment at Paragon, his coworkers and supervisors regularly discriminated against him because he did not conform with their expectations of how a man should look and behave and because of their perception of his sexual orientation.

22. Although Mr. Febles is straight, his coworkers and supervisors perceived him as gay, based on false stereotypes associating gay men with feminine attributes, and discriminated against him based on their negative opinion of gay men.

23. Mr. Febles's coworkers viewed him as effeminate and thought that he failed to adhere to norms about appropriate masculine behavior based on his traits and physical mannerisms, such as crossing his legs, using expressive hand gestures, not using vulgar or aggressive language, being neatly groomed, and wearing colorful clothing.

24. Paragon's employees and management—including William Liang (Finance Director); Gary Lin (Finance Director); Gabriel Pena (Business Manager); Matt Adovic (Business Manager); and a Business Manager known to Mr. Febles only as "Edgar"—viciously harassed Mr. Febles based on their perception that he was gay and that he did not conform to their standards of masculinity.

25. Mr. Febles's coworkers and supervisors derogatorily called Mr. Febles's mannerisms and clothing "gay," targeted him with gendered slurs like "bitch," and referred to him sarcastically by stereotypically feminine epithets like "pumpkin," "sweetheart," and "girl."

26. Mr. Liang, who was Mr. Febles's direct supervisor, reprimanded and ridiculed Mr. Febles for physical mannerisms that Mr. Liang considered "too feminine," including crossing his legs and licking his fingers when turning pages while reading.

27. Paragon's employees and management regularly sent Mr. Febles highly offensive text messages, often including obscene photos.

28. These offensive messages were typically sent through the Group Chat.

29. In these messages, Mr. Febles's coworkers frequently derided him for specific mannerisms and traits which they viewed as feminine.

30. For example, Edgar mocked Mr. Febles for sitting in a position that he considered "effeminate" by sending the Group Chat a photo which showed, on the left, a woman in lingerie sitting with her legs crossed at the knee and, on the right, a man sitting in the same position, captioned with a text message which read, "Edwin at home chilling and Edwin at the office."

31. Mr. Adovic took a photo of Mr. Febles's polka-dot patterned socks, which he then sent to the Group Chat and ridiculed as effeminate, derisively asking, "What the fuck are those?"

32. In response, Mr. Pena sent a text message to the Group Chat which read, "Stuff the sock in his mouth so he won't cry"—a threatening and grossly offensive "joke" about sexually assaulting Mr. Febles.

33. Mr. Liang encouraged this conduct by endorsing Mr. Pena's threat, replying to the Group Chat, "Yeah, something like that."

34. Edgar and Mr. Pena sent photos of gay men having sex to the Group Chat, followed by text messages such as "Caught Edwin on a hidden camera" and "Edwin checking his prostate."

35. On another occasion, Edgar and Mr. Pena sent a photo of a cross-dressing man to the Group Chat, followed by a text message reading, "Edwin on his day off."

36. Without Mr. Febles's knowledge, Matt took a photo of Mr. Febles of speaking with a male coworker, which Matt then sent to the Group Chat along with a text message reading, "Edwin and his gay lover."

37. The harassment was not limited to the text messages: Mr. Febles's coworkers and supervisors also routinely mocked and harassed Mr. Febles to his face in the Paragon office.

38. Approximately four months into Mr. Febles's employment, Paragon relocated him to Mr. Adovic's office.

39. Mr. Adovic made extremely offensive, often obscene comments to Mr. Febles on a regular basis, frequently in front of other Paragon employees.

40. On multiple occasions, Mr. Adovic instructed Mr. Febles and several of his coworkers to come to Mr. Adovic's office, where he mockingly asked Mr. Febles highly offensive and inappropriate questions about "sucking dick," while Mr. Febles's coworkers burst into laughter.

41. Other examples of Mr. Adovic's discriminatory comments include:
    a. "You have perfect lips for sucking dick."
    b. "Do you like it up the ass?"

      c. "When was the first time you did it [in reference to having anal sex]?"

      d. "You're my bitch in this office."

42.    Mr. Adovic also physically harassed Mr. Febles on multiple occasions by grabbing Mr. Febles, putting him in a headlock, holding him down, and punching him while other Paragon employees took pictures and laughed.

43.    Mr. Febles complained repeatedly to Mr. Liang about the discriminatory treatment and asked all members of his sales team to stop harassing him about his gender expression and perceived sexual orientation.

44.    Mr. Febles sent a text message to the Group Chat stating, "I had a conversation with [Mr. Liang] regarding all the gay jokes that my team does referring to me.  I want to let everybody know that I don't like it.  And I'm asking you to stop, no hard feelings."

45.    On or about October 26, 2015, Mr. Liang met with Mr. Febles, Mr. Pena, Mr. Adovic, and Edgar to discuss Mr. Febles's complaints.

46.    However, rather than taking any sort of corrective action, Mr. Liang refused to take Mr. Febles's concerns seriously and trivialized his complaints in front of his coworkers, sarcastically stating, "Be careful what we say to Edwin, as he may want to sue us."

47.    After this meeting, Paragon's employees subjected Mr. Febles to increased discrimination and harassment in retaliation for his complaints; Mr. Liang made it clear that there would be no consequences for any employee who continued to harass Mr. Febles.

48.    On Halloween, Mr. Febles sent a photo of himself in costume to the Group Chat, along with a text message reading, "happy Halloween everybody."

49.    Mr. Febles's coworkers immediately began to ridicule him for the photo and Halloween costume, which they considered effeminate.

50.     Mr. Pena sent a text message to the Group Chat, addressed to Mr. Liang, which read, "Will, we had a disclaimer in this particular group chat where anything can be said.  I understand Edwin asked for us not to call him gay but this picture is BEGGING for us to destroy him."

51.     Other Paragon employees, including Mr. Adovic and Edgar, participated in and encouraged the harassment, saying, "Do it," "Do it no mercy," and "No holds barred."

52.     Further, Paragon employees retaliated against Mr. Febles for complaining about their discriminatory behavior by refusing to answer his work-related questions or send him sales leads, thereby conditioning his ability to perform his job on his willingness to accept their discrimination and harassment.

53.     At Paragon, Mr. Febles's pay was 100% commission-based; he earned $85,000 during his first year and $110,000 during his second year, and, if not for Paragon's discriminatory treatment, would have been on track for further salary increases.

54.     However, the constant harassment and marginalization from Paragon's management made it nearly impossible for Mr. Febles to perform his job effectively, as Paragon refused to grant him the same opportunities that were given to other employees.

55.     On or about December 12, 2016, Mr. Liang called Mr. Febles at home and abruptly terminated his employment without explanation.

56.     In reality, Defendants terminated Mr. Febles's employment because of his sex and perceived sexual orientation and in retaliation for his complaints about discrimination.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Hostile Work Environment in Violation of Title VII**
**(Against Paragon)**

57. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 56 with the same force as though separately alleged herein.

58. Title VII prohibits an employer from discriminating against an employee on the basis of sex.

59. Paragon discriminated against Mr. Febles based on his sex by subjecting him to a hostile work environment because Mr. Febles did not conform with Paragon's expectations for how a man should look, act, and behave.

60. As such, Paragon has violated Title VII.

61. As a direct and proximate consequence of Paragon's sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

62. Paragon's discriminatory conduct was willful and/or in reckless disregard of Plaintiff's protected rights. As such, Plaintiff is entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION
**Unlawful Termination in Violation of Title VII**
**(Against Paragon)**

63. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 62 with the same force as though separately alleged herein.

64. Title VII prohibits an employer from discriminating against an employee on the basis of sex.

65. Paragon discriminated against Mr. Febles based on his sex by terminating Mr. Febles's employment in part because Mr. Febles did not conform with Paragon's expectations for how a man should look, act, and behave.

66. As such, Paragon has violated Title VII.

67. As a direct and proximate consequence of Paragon's sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

68. Paragon's discriminatory conduct was willful and/or in reckless disregard of Plaintiff's protected rights. As such, Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of Title VII
### (Against Paragon)

69. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

70. Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

71. Mr. Febles engaged in protected activity under Title VII when he properly complained to Paragon of Paragon's employees' sex discrimination unlawful under Title VII.

72. Paragon violated Title VII when it retaliated against Mr. Febles by failing to address the unlawful discrimination, subjecting him to further discrimination and harassment, and, ultimately, terminating his employment.

73. As a direct and proximate consequence of Paragon's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL
### (Against All Defendants)

74. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

75. The NYCHRL prohibits an employer from discriminating against an employee on the basis of gender or actual or perceived sexual orientation.

76. Defendants discriminated against Mr. Febles based on his gender and perceived sexual orientation by subjecting him to a hostile work environment because he did not conform with Defendants' expectations for how a man should look, act, and behave, and because Defendants perceived him as gay.

77. As such, Defendants have violated the NYCHRL.

78. As a direct and proximate consequence of Defendants' gender and perceived sexual orientation discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

79. Defendants' discriminatory conduct was willful and/or in reckless disregard of Plaintiff's protected rights. As such, Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### Unlawful Termination in Violation of the NYCHRL
### (Against All Defendants)

80. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 79 with the same force as though separately alleged herein.

81. The NYCHRL prohibits an employer from discriminating against an employee on the basis of gender or actual or perceived sexual orientation.

82. Defendants discriminated against Mr. Febles based on his gender and perceived sexual orientation by terminating his employment in part because he did not conform with Defendants' expectations for how a man should look, act, and behave, and because Defendants perceived him as gay.

83. As such, Defendants have violated the NYCHRL.

84. As a direct and proximate consequence of Defendants' gender and perceived sexual orientation discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

85. Defendants' discriminatory conduct was willful and/or in reckless disregard of Plaintiff's protected rights. As such, Plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL
### (Against All Defendants)

86. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 85 with the same force as though separately alleged herein.

87. The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

88. Mr. Febles engaged in protected activity under the NYCHRL when he properly complained to Defendants of Defendants' gender and perceived sexual orientation discrimination unlawful under the NYCHRL.

89. Defendants retaliated against Mr. Febles by failing to address the unlawful discrimination, subjecting Mr. Febles to further discrimination and harassment, and, ultimately, terminating Mr. Febles's employment.

90. As such, Defendants have violated the NYCHRL.

91. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, damages to be determined at trial; and

G. For such other and further relief as the Court deems just and proper.


Dated: New York, New York
        July 28, 2017


By:    s/ Walker G. Harman, Jr.
        Walker G. Harman, Jr. [WH-8044]
        Edgar M. Rivera [ER-1378]
        THE HARMAN FIRM, LLP
        220 Fifth Avenue, Suite 900
        New York, NY 10001
        (212) 425-2600
        wharman@theharmanfirm.com
        erivera@theharmanfirm.com

        *Attorneys for Plaintiff*